FILED

OCT 2 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BLACKSIDE, INC.
75 Cambridge Parkway, Suite 411
Cambridge, MA 02142

Plaintiff,

     v.

CHAD S. ARRINGTON, d/b/a
PRIMARYSOURCE and/or
PRIME MEDIA
2342 Shattuck Avenue
Suite 251
Berkeley, CA 94704

Defendant.

Case

CASE NUMBER  1:05CV02063

JUDGE: Rosemary M. Collyer

DECK TYPE: General Civil

DATE STAMP: 10/20/2005

JURY ACTION

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Blackside, Inc., for its Complaint against Defendant Chad Arrington, d/b/a

PrimarySource and/or Prime Media ("Arrington"), avers as follows:

### NATURE OF THIS ACTION

1.    This action arises out of the willful and deliberate infringement of Plaintiff's

valuable copyright and trademark rights in the documentary film series *Eyes On The Prize I* and

*Eyes On The Prize II* (collectively "*Eyes On The Prize*").

### PARTIES

2.    Plaintiff Blackside Incorporated is a Massachusetts corporation. Blackside has

been in the business of making documentary films for over thirty years, and is the sole owner of

the copyrights in all fourteen episodes of the *Eyes On The Prize* series.

3.    Defendant Chad Arrington, d/b/a as PrimarySource and/or PrimeMedia

("Arrington") is a resident of California who displays, markets, and sells illegally produced

images and copies of Plaintiff's copyrighted works on his website under the trademark Eyesontheprize.info, in direct violation of the copyright and trademark laws.

### JURISDICTION AND VENUE

4.    The Claim of Copyright Infringement is based on violations of the Copyright Act, 17 U.S.C. §§ 101 *et seq.*  The claims for trademark infringement are based on the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a).

5.    Venue lies in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claim occurred in the District of Columbia.

6.    Personal jurisdiction exists over Defendant Arrington in the District of Columbia as Arrington has (1) transacted business in the District of Columbia, and (2) caused a tortious injury in the District of Columbia through his acts outside of the District.  D.C. CODE § 13-423; *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

### STATEMENT OF FACTS

#### Plaintiff's Intellectual Property

7.    Blackside was founded by the late Henry Hampton for the purpose of making documentary films about the American experience, particularly from the perspective of Black Americans.  Mr. Hampton's crowning achievement, in which he invested more than thirty years of his life and a substantial portion of his finances, is the fourteen-part audiovisual work *Eyes On The Prize*.  *Eyes On The Prize* chronicles the American Civil Rights Movement from the Montgomery, Alabama bus boycott inspired by the heroic civil disobedience of Rosa Parks through desegregation; the dismantling of the Jim Crow laws; the controversies surrounding

bussing and other efforts to eliminate *de facto* segregation in the North; and up to the changing political landscape of post-Vietnam America.

8.    *Eyes On The Prize* initially aired on public television in 1987 (episodes 1 to 6) and 1990 (episodes 7 to 14). The series has garnered almost universal critical acclaim as the most important documentary on the Civil Rights Movement ever made. The second installment of the series was nominated for an Academy Award in 1990.

9.    Blackside is the sole owner of the copyrights in the *Eyes On The Prize* series and related material, such as official lesson plans and condensed versions produced for use in schools. Blackside applied for and obtained Certificates of Copyright Registration from the U.S. Copyright Office, Register of Copyrights for each of the fourteen one-hour episodes that constitute the *Eyes* series, including PA-336-931, PA-336-932, PA-336-938, PA-336-939, PA-336-940, PA-345-169, PA-467-707, PA-467-708, PA-467-709, PA-467-710, PA-467-711, PA-467-712, PA-467-713, PA-467-714, PA-524-324, and PA-524-400. Blackside has the exclusive right to, *inter alia*, "reproduce the [copyrighted works] in copies or phonorecords," to "distribute copies [of the copyrighted works] to the public by sale or other transfer of ownership, or by rental, lease or lending," and to "perform the copyrighted work publicly."

10.    Blackside also owns various trademarks associated with *Eyes On The Prize I & II,* including the mark EYES ON THE PRIZE for its audiovisual series.

11.    In addition to the initial broadcast of the multi-part work on television, authorized copies of the work were also distributed on VHS (videotape) and laser disc to schools and libraries under a license from Blackside that permits certain uses of the series (including screenings) by the license-holders.

12.    Blackside has also distributed copies of the series in VHS (videotape) format for the commercial/home-video market, and such copies were sold through normal retail channels to

3

consumers. The home-video versions of the work were accompanied by a standard home-use license typical for copyrighted video productions.

13. Blackside has never produced or commercially distributed, or authorized the production or commercial distribution of *Eyes On The Prize* in the DVD format. Blackside did authorize a commercial and educational distribution of *Eyes On The Prize I* (episodes 1 through 6) on Laserdisc, but no digital format version of *Eyes On The Prize II* (episodes 7 through 14) has ever been authorized. Other than the Laserdisc version, no other digital version of *Eyes On The Prize I* was ever authorized.

14. *Eyes On The Prize* documents historical events through first-hand accounts by witnesses and survivors of those events, as well as through original film and audio clips of the events as they unfolded. Many of these "archival" film and video clips are the copyrighted works of numerous other parties (the "third-party rights-holders") who vary in size and character from individual photographers to large corporations owning extensive libraries of historical footage.

15. When producing *Eyes On The Prize* for initial broadcast, Blackside purchased licenses from the numerous third-party rights-holders that allowed Blackside to use the underlying content within the *Eyes* films for various purposes. Some of those licenses were in perpetuity, and allow Blackside to include the licensed material in any re-issue, format or revision of the *Eyes* series. Some of the licenses obtained by Blackside covered only the initial broadcasts on public television, and the video release to schools and libraries. Additional licenses were later purchased giving Blackside the right to include the material in the home-video distributions, including in a limited production commemorative edition.

16. Some of the limited licenses purchased by Blackside have expired. It is therefore necessary for Blackside to obtain new licenses from the third-party rights-holders before it can

4

broadcast or distribute *Eyes On The Prize*. Blackside has never "abandoned" *Eyes On The Prize*, or renounced its copyrights therein. In fact, Blackside frequently receives requests from filmmakers, academics, and others for access to, and permission to use short segments of *Eyes On The Prize* in other works, and Blackside often grants these requests sometimes collecting royalties or licensing fees from the requesting party.

**Defendant's Website**

17.    Defendant Chad Arrington is the registered owner of the Internet domain name EYESONTHEPRIZE.INFO ("the domain"). The "Registrant Organization" for the domain is listed in the publicly available "WHOIS" database as "primarysource" with an address of "2342 shattuck avenue suite 251, berkeley ca 94704 [sic]". The administrative and technical contacts listed in the WHOIS database for the domain are "Prime Media" at "48 SHATTUCK SQUARE, Berkeley CA 94704". Defendant Chad Sebastian Arrington has been known to conduct mail-order business from the address 48 Shattuck Square, Suite #11, Berkeley CA 94704." *See In the Matter of the Complaint Against Chad Sebastian Arrington, d/b/a Liberty Financial Credit Services, Inc.*, Postal Service Docket No. FR 97-280, Postal Service Decision (Oct. 3, 1997). Defendant Chad Arrington owns and operates a website accessible through the Uniform Resource Locator (URL) <http://www.eyesontheprize.info> (hereinafter "Defendant's website"). Defendant's website is accessible from any computer connected to the Internet, including computers in the District of Columbia.

18.    Defendant Arrington sells unauthorized copies of *Eyes On The Prize* in a digital DVD format through Defendant's website. The website reproduces and displays images from the copyrighted work. Defendant Arrington specifically chose the domain name and mark EYESONTHEPRIZE.INFO in order to cause confusion as to the source or nature of this product and/or as to give a false appearance that Defendant's website is connected with or authorized by

5

Blackside. In addition to providing a marketplace for illegal DVD copies of *Eyes On The Prize*, the website also displays Blackside's trademarks or colorable imitations thereof in a manner likely to cause confusion.

19.     Blackside has never authorized Defendant Arrington to use its intellectual property for advertising counterfeit copies of *Eyes On The Prize*, to make or distribute copies of *Eyes On The Prize* in any medium or format, or to charge and collect money for such distribution. Arrington has never contacted Blackside nor has he offered Blackside any compensation for his use of Blackside's copyrighted property and trademarks.

20.     On information and belief, Defendant Arrington is not now, and has never been, authorized to distribute PBS's intellectual property, or to use the PBS Home Video mark, nor has Defendant Arrington contacted PBS or offered PBS any compensation for his use of PBS's copyrighted property and/or trademarks. Yet Arrington prominently displays the PBS logo on his website and on packaging for bogus copies of *Eyes On The Prize*.

21.     On information and belief, Defendant Arrington is not now, and has never been, authorized to distribute copyrighted material owned by the third-party rights-holders, nor has Defendant Arrington contacted the third-party rights-holders or offered any third-party rights-holder any compensation for his use of the third-party rights-holders' copyrighted property.

### Plaintiff's Notice To Defendant

22.     Blackside's counsel sent notices of copyright infringement, pursuant to 17 U.S.C. § 512, to Defendant Arrington. These notices were sent:

   a.   On May 3, 2005 to Defendant Arrington by United Parcel Service (UPS), next day air, at 2342 Shattuck Avenue, Berkeley CA, 94704;

   b.   On May 3, 2005 as an Adobe Acrobat file (PDF) attachment to an email addressed to Defendant Arrington at the email addresses "chadonline@msn.com" and "primemediaonline@msn.com", the two email addresses listed on the EYESONTHEPRIZE.INFO domain registration;

    c. On May 5, 2005 as a PDF attachment to an email addressed to Defendant
Arrington at the email address "questions@eyesontheprize.info" which is linked
on Defendant's website under a picture containing the word "Questions?"

23. The notices of infringement sent to Defendant Arrington conformed with the
requirements of 17 U.S.C. § 512(c)(3) in that they included:

    a. Identification of images from *Eyes On The Prize I* and *II* as the copyrighted
material that the complained-of website infringes;

    b. A statement that Defendant Arrington was not authorized by Blackside to use the
copyrighted works in the manner complained of;

    c. A notification that displaying images from *Eyes On The Prize* and offering it for
unauthorized sale was a violation of the copyright laws;

    d. A request that access to the copyrighted material and participation in the
infringing conduct cease immediately;

    e. A certification under penalty of perjury that the notification was sent from counsel
authorized to act on behalf of Blackside; and

    f. A physical or electronic signature of Blackside's counsel.

24. UPS confirmed that the package to Defendant Arrington was delivered and signed
for at 10:13 AM on May 4, 2005. The email and attachment addressed to
"chadonline@msn.com" was returned with the error "mailbox unavailable". No "bounce"
message was received for the email messages and attachments sent to
"primemediaonline@msn.com" and "questions@eyesontheprize.info", and on information and
belief those emails were received by Defendant Arrington. Defendant Arrington never
responded to any of the notices sent to him.

### Defendant Arrington's Illegal Sale and Distribution Of Plaintiff's Copyrighted Work

25. On June 7, 2005, an internet user in the District of Columbia accessed
Defendant's website and ordered a DVD copy of *Eyes On The Prize*, specifying a delivery
address in Washington, D.C. Defendant's website directed the purchasing party to "USA
Merchant" – a web payment service that took purchaser's credit card number. USA Merchant

7

then notified the purchaser that her "Prime Media order # 5568" had been processed, and that purchaser's credit card had been charged $149.95 for "EYES ON THE PRIZE ~COMPLETE 14 VOLUME COLLECTION~". The purchaser's credit card was charged $149.95 for "PRIME MEDIA 510-286-7677 CA" on June 7, 2005. The purchaser conducted the entire transaction from the District of Columbia.

26.     On June 23, 2005, purchaser received a package via the United States Postal Service Priority Mail at the specified address in the District of Columbia. This package contained seven (7) DVD discs on which were reproduced all fourteen (14) episodes of *Eyes On The Prize*.

[Continued on next page]

8

27.    The front cover of the DVD packaging contained a copy of a picture taken from *Eyes On The Prize* and the title "EYES ON THE PRIZE: America's Civil Rights Years."  The top border contained the words "PBS DVD VIDEO" and the PBS logo.  The following reproduction of the front cover is incorporated herein:



**Figure 1 - Front Cover**

28.    The back cover of the package includes an episode index listing the titles of all 14 episodes of *Eyes On The Prize*.  The following reproduction of the back cover is incorporated herein:



**Figure 2 - Back Cover**

29.    The package contained seven (7) DVD-ROM discs, each labeled "EYES ON THE PRIZE: America's Civil Rights Years."  Each disc bears the names of two episodes from the *Eyes On The Prize* series.  Each of these discs is readable by any drive or player compatible with the

DVD-Video format. The seven DVDs are recorded "region-free", meaning that they can be used on any DVD player in the world. The front and back covers of the packaging display the DVD-VIDEO mark (DVD), which is a registered trademark of DVD FLLC. On information and belief, Defendant Arrington has not obtained a license to use the DVD-VIDEO mark from DVD FLLC.

30.    Each of the DVD-ROM discs purchased from Defendant Arrington contain two episodes of *Eyes On The Prize*, with a crude menu system to allow the viewer to choose between episodes. The following reproduction of the menu from the first disc is incorporated herein:



**Figure 3 - Disc 1 Menu**

31.    On information and belief these episodes were copied ("ripped") from VHS format videotapes into a digital format stored on a computer hard drive. The digital format stored on computer hard drive was then recorded ("burned") onto consumer-grade DVD-ROM discs using a writable DVD drive attached to a computer. On information and belief, Defendant Arrington continues to maintain a digitized copy of *Eyes On The Prize* on one or more computer

hard drives within his possession, custody or control. On information and belief, Defendant

Arrington has illegally reproduced the digital copy of *Eyes On The Prize* by recording it to DVD-

ROM media on one or more occasions.

32.     Defendant Arrington has sold at least one copy of *Eyes On The Prize* on DVD-

Video format through his website. On information and belief, Defendant Arrington has

distributed numerous additional DVD copies of *Eyes On The Prize*, including through

Defendant's website, and via other means (including, without limitation, via online sales

conducted on eBay.com).

33.     Defendant Arrington's website is extremely deceptive as it leads interested

consumers and the public at large to believe that the website and/or the product that can be

purchased are endorsed or sponsored by the true copyright owners – Blackside or PBS, rather

than Defendant Arrington who has no rights in *Eyes On The Prize*. On information and belief,

Defendant's deceptive use of Plaintiff's trademarks have been viewed by numerous individuals.

Defendant's website intentionally leads visitors to believe that the products sold through

Defendant's website are legally authorized copies of *Eyes On The Prize* of the same nature and

quality as professionally produced and distributed copies on VHS and other formats, when in

fact they are illegally-made bootlegs of less than commercial quality. By using the PBS Home

Video mark, the DVD-VIDEO mark, and other trademarks, Defendant Arrington intentionally

creates a false impression that the DVDs offered for sale on Defendant's website are

professionally produced products consistent with the quality standards of Blackside, PBS and

their legal licensees, even though those products were produced without Blackside's or PBS's

knowledge or control. Defendant Arrington and Defendant's website damages Blackside's

reputation as a professional video production company by, *inter alia*, (a) using a non-

professional reproduction of a commercial grade analog tape as a "master" for creating DVD

discs; (b) adding a crude menu to each DVD disc; and, (c) packaging the illegal DVD discs in deceptive but poor-quality packaging. Defendant Arrington's acts and omissions create the impression that Blackside is responsible for an unprofessional and technically inferior video product.

34.     The infringing images, phrases, and content remain posted on Defendant's website, and Defendant Arrington continues to illegally offer copyrighted material for sale on his website. On information and belief, Defendant Arrington continues to sell unauthorized copies of *Eyes On The Prize*. Defendant's website remains accessible on the Internet.

**COUNT I**
**COPYRIGHT INFRINGEMENT FOR**
**DIGITIZING AND DISTRIBUTING**
**COUNTERFEIT COPYRIGHTED WORKS IN**
**VIOLATION OF 17 U.S.C. § 501**

35.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1 to 34 above.

36.     Plaintiff is the exclusive owner of valid copyrights to the audiovisual works collectively entitled *Eyes On The Prize*.

37.     On information and belief Defendant Arrington either had access to an authorized or unauthorized copy of each of the 14 episodes of *Eyes On The Prize*.

38.     Long after Plaintiff registered its copyrights in *Eyes On The Prize*, Defendant Arrington copied, reproduced and/or distributed unauthorized, digitized copies of all 14 episodes of *Eyes On The Prize*. Such unauthorized, digitized copies are slavish copies of Plaintiff's copyrighted episodes, with amateurish menus.

39.     On information and belief, numerous instances of copyright infringement have taken place on or through Defendant Arrington's website and offline. Each and every one of these infringements is made possible, facilitated and indeed encouraged by Defendant Arrington.

13

40.     The infringement of each of Plaintiff's copyrights in the *Eyes On The Prize* episodes that have been illegally copied and sold constitutes a separate and distinct act of infringement.

41.     Defendant Arrington willfully and knowingly engaged in the acts complained of above, without Plaintiff's consent and in blatant disregard of, and in indifference to, Plaintiff's rights and in violation of the Copyright Act, 17 U.S.C. § 501.

42.     As a direct and proximate result of Defendant Arrington's unlawful conduct, Plaintiff has suffered substantial, immediate and irreparable injury to its rights. Plaintiff will continue to suffer such substantial, immediate and irreparable injury, unless Defendant Arrington's ongoing acts of copyright infringement are permanently enjoined. The public interest favors the issuance of an injunction to protect Plaintiff from further acts of copyright infringement, as Plaintiff has no adequate remedy at law.

43.     Plaintiff is entitled to a judgment for damages resulting from Defendant Arrington's unlawful conduct and an injunction permanently enjoining and restraining Defendant Arrington from engaging in further acts of copyright infringement.

## COUNT II
### VIOLATION OF THE LANHAM ACT FOR FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a)

44.     Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1 to 43 above.

45.     Plaintiff adopted and has used the mark EYES ON THE PRIZE in commerce in connection with a series of pre-recorded videotapes comprising a documentary on the American Civil Rights movement since at least as early as 1986 and long prior to the acts complained of herein.

14

46.    Plaintiff has also adopted and has used the mark EYES ON THE PRIZE in commerce in connection with entertainment services in the nature of a series of televised documentary since at least as early as 1986 and long prior to the acts complained of herein.

47.    The EYES ON THE PRIZE mark is inherently distinctive as applied to Plaintiff's goods and services.

48.    As a result of Plaintiff's activities and expenditure, and Plaintiff's provision of goods and services under the mark, the EYES ON THE PRIZE mark has come to indicate source in Plaintiff, exclusively.

49.    Plaintiff's EYES ON THE PRIZE videotapes have been used and shown throughout the United States since approximately 1986, and continue to be.  Authorized videotapes under the mark at issue continue to be sold and purchased on the secondary market.

50.    As a result of widespread critical acclaim and notoriety for the work and the continuous public dialogue and appreciation for Plaintiff's televised and recorded work over nearly the past three decades, the EYES ON THE PRIZE mark has become famous.

51.    Although Plaintiff has not yet re-released the documentary in digital format, the EYES ON THE PRIZE series continues to be shown, taught and appreciated in schools, libraries and other facilities throughout the United States.

52.    Plaintiff owns U.S. Registration No. 1,469,457 for the mark EYES ON THE PRIZE for entertainment services, namely a continuing services of television documentary programs, issued December 15, 1987 on the Principal Register in the U.S. Patent and Trademark Office.  Such registration is valid, subsisting and incontestable.

53.    Long after Plaintiff's first use and registration of EYES ON THE PRIZE, Defendant Arrington began providing retail sales services over the Internet under the mark and domain name "Eyesontheprize.info."  Arrington touts his services as "Your source for everything

EOTP [Eyes On The Prize]." Through such website branded with the Eyesontheprize.info mark Arrington sells copies (including illegal digital copies) of the EYES ON THE PRIZE documentary, but also advertises through sponsored links interracial dating services, a civil rights museum and books on civil rights.

54.    Defendant Arrington's use of the mark and domain name is in commerce in connection with his services.

55.    Defendant Arrington willfully and knowingly engaged in the acts complained of above, without Plaintiff's consent and in blatant disregard of, and in indifference to, Plaintiff's rights.

56.    Plaintiff has never authorized the use of the EYES ON THE PRIZE mark for any other product but the documentary. Specifically, Plaintiff has not authorized the mark to be used in connection with a dating service. Defendant Arrington's use of Eyesontheprize.info as a mark and domain name are likely to cause confusion as to source or sponsorship of the services provided by Arrington or as to affiliation between Arrington and Plaintiff, to Plaintiff's damage and detriment.

57.    Defendant Arrington's conduct, as complained of above, constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a).

58.    As a direct and proximate result of Defendant Arrington's unlawful conduct, Plaintiff has suffered substantial, immediate and irreparable injury to its rights. Plaintiff will continue to suffer such substantial, immediate and irreparable injury, unless Defendant Arrington's ongoing acts of trademark infringement are permanently enjoined. The public interest favors the issuance of an injunction to protect Plaintiff from further acts of trademark infringement, as Plaintiff has no adequate remedy at law.

59.     Plaintiff is entitled to a judgment for damages resulting from Defendant

Arrington's unlawful conduct and an injunction permanently enjoining and restraining Defendant

Arrington from engaging in further acts of trademark infringement and unfair competition.

**COUNT III**
**VIOLATION OF THE LANHAM ACT FOR**
**DILUTION OF A FAMOUS MARK IN**
**VIOLATION OF 15 U.S.C. § 1125(c)**

60.     Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1 to

59 above.

61.     Plaintiff adopted and has used the mark EYES ON THE PRIZE in commerce in

connection with a series of pre-recorded videotapes comprising a documentary on the American

Civil Rights movement since at least as early as 1986 and long prior to the acts complained of

herein.

62.     Plaintiff has also adopted and has used the mark EYES ON THE PRIZE in

commerce in connection with entertainment services in the nature of a series of televised

documentary since at least as early as 1986 and long prior to the acts complained of herein.

63.     The EYES ON THE PRIZE mark is inherently distinctive as applied to Plaintiff's

goods and services.  On information and belief, Plaintiff is the sole and exclusive owner of

federal trademark registrations in the United States which include the phrase "EYES ON THE

PRIZE."

64.     As a result of widespread critical acclaim and notoriety for the work and the

continuous public dialogue and appreciation for Plaintiff's televised and recorded work over

nearly the past three decades, the EYES ON THE PRIZE mark has become famous.

65.     Plaintiff owns U.S. Registration No. 1,469,457 for the mark EYES ON THE

PRIZE for entertainment services, namely a continuing services of television documentary

programs, issued December 15, 1987 on the Principal Register in the U.S. Patent and Trademark Office. Such registration is valid, subsisting and incontestable.

66.     Long after Plaintiff's first use and registration of EYES ON THE PRIZE, Defendant Arrington began providing retail sales services over the Internet under the mark and domain name "Eyesontheprize.info." Arrington touts his services as "Your source for everything EOTP [Eyes On The Prize]." Through such website branded with the Eyesontheprize.info mark Arrington sells copies (including illegal digital copies) of the EYES ON THE PRIZE documentary, but also advertises through sponsored links interracial dating services, a civil rights museum and books on civil rights.

67.     On or about May 3, 2005, Plaintiff notified Defendant that he was infringing Plaintiff's rights in connection with EYES ON THE PRIZE. Defendant has not responded in anyway or removed the infringing material from his website.

68.     On information and belief, Defendant Arrington was well aware of the EYES ON THE PRIZE trademarks when he posted the images to his website.

69.     Defendant Arrington's unauthorized use of Eyesontheprize.info as a mark and domain name to sell unauthorized poor quality copies of *Eyes On The Prize* as well as advertising completely unrelated services such as internet dating, dilutes the distinctive quality of Plaintiff's mark, tarnishes Plaintiff's reputation for the production of high quality products, and jeopardizes the valuable goodwill associated with both the EYES ON THE PRIZE mark and the *Eyes On The Prize* film series.

70.     Defendant Arrington willfully and knowingly engaged in the acts complained of above, without Plaintiff's consent and in blatant disregard of, and in indifference to, Plaintiff's rights.

18

71.    Defendant Arrington's conduct, as complained of above, constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(c).

72.    As a direct and proximate result of Defendant Arrington's unlawful conduct, Plaintiff has suffered substantial, immediate and irreparable injury to its rights.  Plaintiff will continue to suffer such substantial, immediate and irreparable injury, unless Defendant Arrington's ongoing acts of trademark infringement are permanently enjoined.  The public interest favors the issuance of an injunction to protect Plaintiff from further acts of trademark infringement, as Plaintiff has no adequate remedy at law.

73.    Plaintiff is entitled to a judgment for damages resulting from Defendant Arrington's unlawful conduct and an injunction permanently enjoining and restraining Defendant Arrington from engaging in further acts of trademark infringement and unfair competition.

<b>COUNT IV<br>COMMON LAW TRADEMARK INFRINGEMENT</b>

74.    Plaintiff re-alleges and incorporate by reference the allegations in paragraphs 1 to 73 above.

75.    Defendant Arrington's conduct, as complained of above, constitutes trademark infringement, in violation of the common law.

76.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered substantial, immediate and irreparable injury to its rights.  Plaintiff will continue to suffer such substantial, immediate and irreparable injury, unless Defendant's ongoing acts of trademark infringement are permanently enjoined.  The public interest favors the issuance of an injunction to protect Plaintiff from further acts of trademark infringement, as Plaintiff has no adequate remedy at law.

19

77.    Plaintiff is entitled to a judgment for damages resulting from Defendant's

unlawful conduct and an injunction permanently enjoining and restraining Defendants from

engaging in further acts of trademark infringement.

### COUNT V
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW § 17200

78.    Plaintiff alleges and incorporates herein by reference the allegations contained in

paragraphs 1 through 77!**Syntax Error,** ! above.

79.    The actions set forth above violate federal and state laws, including the federal

Copyright Law, 17 U.S.C. § 501 *et seq.*, the Lanham Act, 17 U.S.C. § 1202, and common law in

the District of Columbia.

80.    Defendant engaged in these unfair practices to sell and pass of as his original,

copyrighted versions of *Eyes On The Prize.*

81.    The actions set forth above are harmful to Plaintiff, and harmful to consumers.

These actions constitute unfair business practices within the meaning of the Unfair Competition

Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

[Continued on next page]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks for judgment against Defendants and respectfully prays

that the Court award Plaintiff the following relief:

A. Monetary damages including Defendant Arrington's profits in such amount as may be found; alternatively, maximum statutory damages in an amount not less than $150,000 with respect to each copyrighted work infringed, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c);

B. Trebled monetary damages for federal trademark infringement, including damages for lost profits, pursuant to 15 U.S.C. § 1117;

C. A permanent injunction enjoining Defendant Arrington, and his respective agents, employees, officers, successors, licensees and assigns, from directly or indirectly infringing Plaintiff's copyrights (whether now in existence or hereafter created) including without limitation its copyrights in the *Eyes On The Prize* works;

D. A permanent injunction enjoining Defendant Arrington, and his respective agents, employees, officers, successors, licensees and assigns, from causing, contributing to, enabling, facilitating or participating in the infringement of Plaintiff's rights in the EYES ON THE PRIZE mark, and all associated marks;

E. A permanent injunction enjoining Defendant Arrington from possessing any counterfeit copies of Plaintiff's works, including the *Eyes On The Prize* works, and ordering the seizure and destruction of all illegal counterfeit copies of *Eyes On The Prize* in the possession of Defendant Arrington or his agents;

F. Reimbursement of Plaintiff's reasonable attorney's fees and costs and prejudgment interest, according to law; and

G. Such other relief that this Court deems equitable, just and proper.

Respectfully submitted,

By: _____

Anthony T. Pierce, D.C. Bar No. 415263
Tobias E. Zimmerman, D.C. Bar No. 475202
AKIN GUMP STRAUSS HAUER & FELD, L.L.P.
1333 New Hampshire Ave, N.W.
Washington, D.C. 20036
202.887.4000
202.887.4288 fax

COUNSEL FOR BLACKSIDE, INC.