**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BLACKSIDE, INC.

      Plaintiff,

      v.                                                    Case No. 05-2063

CHAD S. ARRINGTON, d/b/a
PRIMARYSOURCE and/or
PRIME MEDIA

      Defendant.

**PLAINTIFF BLACKSIDE, INC.'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**
**AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Plaintiff Blackside, Inc. ("Blackside") moves, pursuant to Federal Rule of Civil

Procedure 55(b)(2), for entry of Default Judgment against Defendant Chad S. Arrington

("Arrington").[1]  Blackside filed the above captioned lawsuit against Arrington on October 19,

2005.  On February 7, 2006 the Clerk entered a notice declaring Arrington to be in Default for

having failed to answer this lawsuit.  Blackside requests $2,100,000 in statutory damages, plus

interest; permanent injunctive relief; and attorneys fees and costs associated with bringing this

action.  Such an award is appropriate for the reasons stated herein.

**Facts Supporting Default Judgment**

1.      Blackside, a for-profit documentary film company based in Boston,

Massachusetts, holds copyrights for each of the fourteen (14) episodes of the award-winning

television documentary series *Eyes on the Prize I & II* about the American civil rights

---

[1] While preparing this motion for filing Blackside received the Court's April 12 and 13, 2006 Order to
Show Cause why this action should not be dismissed for failure to prosecute.  Blackside apologizes for the delay in
bringing this motion, and shall file a separate paper regarding the Court's Order to Show Cause.

movement.  *See* Complaint ("Compl.") at ¶¶ 7-9.[2]  The *Eyes* films originally aired on PBS in

1987 (episodes 1-6) and 1990 (episodes 7-14).  *Id.* at ¶ 8.  The *Eyes* series were released through

PBS on VHS format, initially for sale to educational institutions, and later to consumers.  *Id.* at

¶¶ 11-12.  The *Eyes* series was sold both as individual episodes, and as packaged sets of the first

series, the second series, and both series together.  *See*  4/14/06 Declaration of Judi Hampton

("Hampton Decl."), at ¶ 2.  A laser disc version of episodes 1-6 was also released.  *See* Compl. at

¶ 11.  The *Eyes on the Prize* series has never been released or distributed on the DVD format.  *Id.*

at ¶ 13.  Due to intellectual property licensing issues, the *Eyes* series have not been commercially

distributed in any format for several years.  *See id.* at ¶¶ 14-16.  Blackside also owns various

trademarks associated with the *Eyes* series, including the mark "EYES ON THE PRIZE" as

referring to an audiovisual series.  *Id.* at ¶ 10.  Used VHS copies of individual episodes sell

online for $75 or more apiece.  *See* Hampton Decl. at ¶ 3.  Pre-owned VHS copies of both series

(all fourteen episodes) sell online for as much as $2000.00.  *See id.*

2.      Blackside has been working towards rebroadcasting *Eyes on the Prize I & II* on

PBS, starting in the fall of 2006.  *See* Hampton Decl. at ¶ 4.  This rebroadcast would be

accompanied by a PBS release of both *Eyes on the Prize* series on DVD and VHS for sale to the

educational/non-commercial market (*i.e.*, libraries, schools, etc.).  *See id.*  Relicensing the third-

party film clips and audio recordings used in the *Eyes* series for the limited purpose of a

broadcast on public television with corresponding educational distribution has cost in excess of

$850,000, including time and labor.  *See id.*

---

[2] Defendant Chad Arrington's default "establishes [his] liability for the well pleaded allegations of the complaint," and those facts should be taken as true.  *DirecTV v. Agee*, 405 F. Supp. 2d 6, 9 (D.D.C. 2005) (citing *Adkins v. Teseo,* 180 F. Supp. 2d 15, 17 (D.D.C.2001); *Avianca, Inc. v. Corriea,* 1992 WL 102999, at *1 (D.D.C. 1992); *and Brock v. Unique Racquetball & Health Clubs, Inc.,* 786 F.2d 61, 65 (2d Cir.1986)).

3.      Defendant Chad S. Arrington is the registrant of the Internet Domain

"eyesontheprize.info."  *See* Compl. at ¶ 17.  Arrington operates a website at the URL

<http://www.eyesontheprize.info/>, through which he purports to be "Your Source For

Everything EOTP."  *See* Exhibit A hereto (4/12/06 Screen Capture).  Arrington's website informs

internet users: "Here you will find information such as where to buy the complete series (or you

can purchase directly from us). . . ." *Id.*  Arrington's website uses Blackside's trademarks,

including the "EYES ON THE PRIZE" mark, and also displays the "PBS" logo, even though

Arrington has no affiliation with PBS, and has never been authorized to use the PBS mark.  *See*

Compl. at ¶ 20; Id.

4.      Through his website Arrington offers for sale DVD copies of the entire fourteen-

part *Eyes* series.  *See* Compl. at ¶ 18.  The DVDs that Arrington offers for sale are not authorized

by Blackside, PBS, or any of the multiple third-parties whose copyrighted materials are

contained within the *Eyes* films.  *See id.* at ¶¶ 19-21.

5.      In May of 2005, Blackside's attorneys contacted Arrington through various

means, and informed him that his actions were in violation of Blackside's copyrights, and

requesting that he immediately cease and desist from any further infringement of Blackside's

copyrights and trademarks.  *See* Compl. at ¶¶ 22-24.  Arrington did not respond to these notices.

*See id.* at ¶ 24.

6.      In June 2005, an internet user in the District of Columbia purchased a DVD copy

of the *Eyes* series through Arrington's website.  *See* Compl. at ¶¶ 25.  Arrington's website

directed this user to the online payment site of "USA Merchant," which accepted the purchasing

user's credit card information, and proceeded to charge her credit card $149.95 for "Prime Media

order # 5568." *Id.*  On June 23, 2005, the purchasing user received a package, addressed from

the same mail box address to which Arrington's website is registered, and containing seven (7) DVD discs on which were produced each of the fourteen (14) episodes of *Eyes on the Prize I & II*. *Id.* at ¶¶ 26, 29-30. The DVD cover includes a color reproduction of Blackside's trademarks, and also purports to be a "PBS DVD VIDEO." *Id.* at ¶¶ 27-28.

       7.    Blackside filed this lawsuit on October 20, 2005, alleging violations of the Copyright Act, 17 U.S.C. §§ 501 et seq. (*see* Compl. at ¶¶ 35-43), and the Lanham Act, 15 U.S.C. § 1125 (*see* Compl. at ¶¶ 44-59 & 60-73). Blackside also alleges common law trademark infringement (*see* Compl. at ¶¶ 74-77) and violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. *See* Compl. at ¶¶ 78-81.

       8.    Plaintiff's process server attempted personal service on Arrington at numerous locations where he was thought to live or work. *See* Declaration Re: Diligence [dkt no. 04]. In attempting to serve Arrington, Plaintiff's process server spoke to Arrington's mother. *See id.* at p.3. On November 9, 2005 Blackside effected service of the Complaint and Summons pursuant to California Code of Civil Procedure § 415.20 and California Business and Professional Code § 17538.5 by sending copies to Arrington at the commercial mailbox that he uses to do business, and leaving copies with the manager of the establishment from which he rents the mailbox. *Id.*

       9.    Shortly after Blackside effectuated service on Arrington, a series of identical auction/sales were posted on the eBay auction site by a user named "arivas27" offering complete DVD sets of the *Eyes* series. *See* Declaration of Anthony T. Pierce In Support of Plaintiff's Motion for Default [05] at ¶ 3; 4/13/06 Declaration of Sarah E. Bolen ("Bolen Decl.") at ¶ 2. These "auctions" were opened at a starting bid of $100.00, but offered potential buyers the ability to purchase immediately for $125.00 under eBay's "Buy It Now" option. Because of the popularity of the *Eyes* series, these auctions closed very quickly, many before Blackside's

attorneys were even aware of them. *See* Bolen Decl. at ¶ 2. At least five of these auctions were commenced and closed between Friday, November 11 and Tuesday, November 15, 2005. *See id.*

10. An employee of Blackside's attorneys purchased one of the DVD sets offered by "arvias27" on November 15, 2005 for $125.00, paid through PayPal. *See* Bolen Decl. at ¶ 3. She received a DVD copy of the *Eyes* series via United States Postal Service at her work address in the District of Columbia on or about December 15, 2005, with a return address of "Ada Rivas, Ebay Purchase, 3301 Telegraph Ave., Oakland CA 94609." *Id.* at ¶ 4. This address is approximately three miles from the commercial mail box that Arrington is known to have used (less than 10 minutes by car, according to "Google Maps"). *See id.* at ¶ 5. The packaging, labels and other characteristics of the DVDs received from "Ada Rivas" are identical to those previously purchased from Arrington through the transaction described in the Complaint. *See id.* at ¶ 4.

11. On February 9, 2006, WGBH Boston, a PBS affiliate that has been one of Blackside's key partners in producing and airing the *Eyes* series, received a complaint from a viewer and supporter who had purchased a fraudulent copy of the *Eyes* series through Arrington's website. *See* Exhibit B hereto (2/9/06 E-Mail from D. Noyes (WGBH Boston) to S. Forman (one of Blackside's attorneys)). This viewer purchased the fraudulent copy from Arrington believing that his website was officially sanctioned by PBS, and that he was offering legitimate copies of the *Eyes on the Prize* films for sale. *Id.*

12. As of April 12, 2006 Arrington's website is still available on the Internet at the same address, and continues to offer illegal DVD copies of Blackside's films for sale. *See* Exhibit A hereto (4/12/06 Screen Capture).

13.    On February 7, 2006 the Clerk of this Court entered a notice of Default against the Defendant pursuant to Fed. Rule Civ. P. 55(a).  *See* Default [07].  The Default was based, in part, on the Military Affidavit filed by Plaintiff's counsel on February 6, 2006, in which Plaintiff's Counsel stated that he was without adequate information to determine whether or not the Defendant was in the armed services of the United States or its Allies.  *See* Military Affidavit [06] at 1.  On February 7, 2006, after the entry of Default by the Clerk, Plaintiff's counsel received official notification from the Department of Defense that the Defendant, Chad S. Arrington, is not listed as currently serving in the active duty of the armed services of the United States.  *See* "Military Status Report Pursuant to The Service Members Civil Relief Act," dated February 7, 2006, and attached hereto as Exhibit C.

### Plaintiff's Request For Default Judgment

Blackside hereby requests that the Court enter judgment against the Defendant, Chad S. Arrington for $2.1 million in statutory damages, and enjoin him from further infringement of Blackside's copyrights and other intellectual property, including ordering him to turn over control of the "eyesontheprize.info" domain to Blackside.  Blackside also requests, pursuant to 17 U.S.C. § 505, that the that the Court award Blackside its costs (including reasonable attorneys' fees) incurred in bringing this action.  The requested relief is necessary to remedy the instances of past infringement that Blackside has direct knowledge of, prevent future infringement and other damage to Blackside's marks and reputation, and to adequately address Arrington's blatant disregard for the law and for the legal authority of this Court.

**A.    Plaintiff is Entitled To Maximum Statutory Damages**

Under the Copyright Act, 17 U.S.C. § 504(c)(2), this Court has broad discretion to grant statutory damages of up to $150,000 per violation.  *See Feltner v. Columbia Pictures Television,*

*Inc.*, 523 U.S. 340, 345-346 (1998) (stating that "statutory damages are to be assessed in an amount that the court considers just. . . . [I]n the event that the court finds the infringement was willful or innocent, the court in its discretion may, within limits, increase or decrease the amount of statutory damages." (internal quotes omitted)). "The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury, but is also designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952). Owing to Arrington's willful and egregious conduct, and in light of the damage Arrington has caused and continues to cause to Blackside's reputation, this Court can and should award the maximum statutory damages in this case.

There can be no question in this case that Arrington has willfully infringed Blackside's copyrights, even after being placed on notice of his infringing conduct, and even after being served with this lawsuit. Such continuing activity, in the face of clear notice establishes the willfulness of Defendant's conduct. *See e.g.*, *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 84 (D.D.C. 2003) ("An infringer willfully infringes if he has actual knowledge of his infringement or if he recklessly disregards the possibility of infringing a copyright."); *Nat'l Cable Television Ass'n, Inc. v. Broadcast Music, Inc.*, 772 F. Supp. 614, 653 (D.D.C. 1991) ("Willfulness . . . is established where the infringer knows that his or her action constitutes infringement."). *See also Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (finding willfulness was clear where "Plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiffs' communications."); *id.* (also holding "this Court may infer that Defendants willfully infringed Plaintiffs' copyrights [from] Defendants' default." (citing *Microsoft Corp. v. Wen*, 2001 WL 1456654, *4-5 (N.D. Cal. 2001); *Sony Music Entertainment v. Cassette Production*, 1996 WL

673158, *3 (D.N.J. 1996); *Fallaci v. The New Gazette Literary Grp.*, 568 F. Supp. 1172, 1173

(S.D.N.Y. 1983); *and Original Appalachian v. Yuil Int'l Corp.*, 1987 WL 123986, 5 U.S.P.Q.2d

(BNA) 1516, 1524 (S.D.N.Y. 1987))).

Other factors considered by courts in awarding maximum statutory damages weigh in

favor of such an award here.  For example, the Fourth Circuit has specifically upheld a maximum

statutory award that was based, in part, on a finding that the defendants had "a history of

copyright infringement [and] . . . are apparently impervious to either deterrence or

rehabilitation."  *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*, 74 F. 3d

488, 496 (4th Cir. 1996) (citing *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228,

234 (1952)).  Defendant Arrington has an indisputable record of previous copyright violations.

*See Infotext, Inc. v. Chad Arrington, et. al.*, No. 97-1506-L(LSP), slip op. (S.D. Cal. Nov. 1,

2001) (Memorandum Decision and Order of Default Judgment And Damages After Ninth Circuit

Remand) (attached hereto as Exhibit A); *see also Infotext, Inc. v. Liberty Financial Credit*, No.

98-55649, 2000 U.S. App. LEXIS 31183, Copy L. Rep. (CCH) ¶ 28,197 (9th Cir. Dec. 4 2000)

(unpublished) (attached hereto as Exhibit B).  The Court has discretion to award maximum

statutory fees as deterrence against future violations, and such an award is appropriate here.  *See*

*Harrison Music*, 293 F. Supp. 2d at 84 ( "Statutory damages are not designed to be merely

compensatory or restitutionary, but are also meant to discourage wrongful conduct.");  *see also*

*Columbia Pictures Industries, Inc. v. Landa*, 974 F.Supp. 1, 15 (D.D.C. 1997) (stating that "the

damage award should put potential infringers on notice that it costs less to obey the copyright

laws than to violate them.") (internal quotes omitted); *and F.W. Woolworth Co.*, 344 U.S. at 233.

Another measure of statutory damages is the relation of the requested award to license

fees that would have been due for the infringing conduct.  Here, Blackside has not specifically

licensed the infringed works for commercial distribution on DVD, but it cost more than $850,000 in labor and licensing fees just to relicense the third-party material contained in the films for the limited purpose of a PBS broadcast and educational release. *See* Hampton Decl. at ¶ 4. Licensing the third-party materials for a commercial DVD release – such as Arrington has been illegally producing – would cost substantially in excess of $1 million. If Blackside were to license the *Eyes* series for commercial distribution, it would charge substantially more than $1 million. *See* Hampton Decl. at ¶ 5. Thus, an award of $2.1 million is well justified here. *See Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (saying damages of three times the license fee "fall comfortably within the statutory scheme established by Congress.").

**B.    The Court Should Award Damages For Each Of The Fourteen Works Infringed.**

Each episode of *Eyes* has been marketed and sold as an independent work in its own right, and these individual episodes continue to be sold on the secondary market. Therefore, each of the fourteen episodes constitutes an independent work entitled to separate damages under 17 U.S.C. § 504(c). *See Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117-18 (1st Cir. 1993) (although four television episodes fell under one copyright, each episode was produced separately and therefore constituted an independent "work"); *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 768 (11th Cir. 1996) (holding that independently produced episodes of a television series do not constitute a "collection" or "compilation," but are separately infringed "works" under § 504(c)(1)). The DVD sets that Defendant is selling each contain all fourteen separate episodes of the *Eyes* series, and Plaintiff is therefore entitled to statutory damages for each episode. *See Walt Disney Co. v. Powell* , 897 F.2d 565, 569 (D.C. Cir. 1990) (stating: "statutory damages are to be calculated according to the number of works infringed. . . .").

Accordingly, Blackside requests damages of $150,000.00 for each of the fourteen works infringed, for total statutory damages of $2,100,000.00. Blackside also requests that the Court award pre- and post-judgment interest.

**C.    A Permanent Injunction Is Warranted To Prevent Further Infringement**

Plaintiff also requests permanent injunctive relief, aimed at immediately halting the Arrington's illegal sales, and preventing further damage to Blackside's reputation.   Arrington continues to operate his website at "eyesontheprize.info," and continues to offer the *Eyes* series for sale on DVD.  "When a copyright plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction." *Walt Disney*, 897 F.2d at 567-68 (citing *Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 976 (9th Cir. 1981)) (emphasis in the original).  "Generally, it would appear to be an abuse of discretion to deny a permanent injunction where liability has been established and there is a threat of continuing infringement." *Walt Disney*, 897 F.2d at 567-68 (quoting M.& D. Nimmer, 3 NIMMER ON COPYRIGHT, § 14.06[B] at 14-55-14-56 (1989)).

It is necessary and appropriate that the Court also order Arrington to immediately turn control of the "eyesontheprize.info" Internet domain over to Blackside to Arrington's continued use of that website to deceive potential customers of Blackside's films, and to allow Blackside to mitigate the harm Arrington has already caused to Blackside's reputation by notifying his past and prospective customers of the fraud, and thereby correcting any false impressions about Blackside's involvement with Arrington's shoddy and illegal products.  It is also necessary that the Court's order include and be directed to Register.com, the domain registrar that initially registered the "eyesontheprize.info" domain to Arrington.  Arrington has clearly chosen to ignore the notices of this Court, and has sought to make himself "judgment proof" through avoidance.

Register.com is capable of transferring the registration to Blackside at the direction of this Court, even without Arrington's cooperation, and such an order from the Court will give Register.com legal authority to transfer the internet domain from Arrington to Blackside.

**D.     Blackside Is Entitled To Costs And Fees**

Arrington's willful acts of infringement entitle Blackside to a recover reasonable costs and attorneys' fees pursuant to 17 U.S.C. § 505. *See, e.g.*, *Walt Disney*, 897 F.2d at 568 (awarding a plaintiff $20,000 in attorneys' fees after finding that the defendant had "acted recklessly, willfully and knowingly" in his actions constituting copyright infringement); *see also Harrison Music*, 293 F. Supp. 2d at 85 (fee award "is based on whether imposition of the fees will further the goals of the Copyright Act, not on whether the losing party can afford to pay the fees.").

Dated April 14, 2006            Respectfully submitted

By: _____
     Anthony T. Pierce, D.C. Bar No. 415263
     Tobias E. Zimmerman, D.C. Bar No. 475202
     AKIN GUMP STRAUSS HAUER & FELD, L.L.P.
     1333 New Hampshire Ave, N.W.
     Washington, D.C.  20036
     202.887.4000
     202.887.4288 fax

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BLACKSIDE, INC.

Plaintiff,

      v.

CHAD S. ARRINGTON, d/b/a
PRIMARYSOURCE and/or
PRIME MEDIA

Defendant.

Case No. 05-2063

### [PROPOSED] ORDER

It appearing that the above-named Defendant has failed to plead or otherwise defend this action though duly served with summons and copy of complaint on the ninth day of November, 2005, an Entry of Default was entered in this action on February 7, 2006, and Defendant herein is in default.  As a result of Arrington's default in this matter, and for the reasons set forth herein, and in Plaintiff's Motion For Entry of Default Judgment the Court finds that Plaintiff's Motion for Entry of Default Judgment should be granted.

The Court finds that Defendant Chad S. Arrington has violated 17 U.S.C. § 501 on twenty-eight (28) separate occasions as described in Plaintiff's Motion, and is liable to Plaintiff for $2,100,000.00 in statutory damages for that infringement, pursuant to 17 U.S.C. § 504(c) with pre- and post-judgment interest.  The Court further finds it appropriate to award Plaintiff's costs and attorney's fees, pursuant to 17 U.S.C. § 505.

It is therefore **ORDERED** this __ day of _____, 2006 that Plaintiff's Motion For Entry of Default Judgment be, and hereby is, **GRANTED**; and it is further

**ORDERED** that the Clerk shall enter **JUDGMENT** against Defendant Chad S. Arrington in the amount of $2,100,000.00, with interest; and it is also

**ORDERED** that Defendant shall be liable for Plaintiff's costs and attorney's fees incurred in bringing this action, and that Plaintiff shall submit to the Court an accounting of such fees and costs within thirty (3) days after the date of this Order; and it is also

**ORDERED** that Defendant be and hereby is **ENJOINED** from further infringement of any of Plaintiff's copyrighted or trademarked works; and it is also

**ORDERED** that Defendant be and hereby is **ENJOINED** from further use of the "eyesontheprize.info" Internet domain; and it is further

**ORDERED** that Defendant immediately surrender custody and control of the "eyesontheprize.info" Internet domain to Plaintiff, and that Defendant take all actions necessary and proper with the relevant entities and authorities to transfer registration of that domain to Plaintiff; and it is finally

**ORDERED** that Register.com or any other person, entity or corporation acting as an agent of Defendant, or on Defendant's behalf with respect to the Internet domain "eyesontheprize.info" shall immediately take all steps necessary to transfer registration and control of that Internet domain to Plaintiff to hold on such terms and for such duration as Defendant is entitled to hold the registration and control of said domain.

_____
Hon. Rosemary M. Collyer
United States District Court Judge

# EXHIBIT A







April 12, 2006



**THANK YOU FOR VISITING**

# EYESONTHEPRIZE.INFO

**HERE YOU WILL FIND INFORMATION SUCH AS WERE TO BUY THE COMPLETE SERIES (OR YOU CAN PURCHASE DIRECTLY FROM US), WHAT THE SERIES CONSISTS OF AND WHERE TO PURCHASE READING COMPANIONS FOR THE SERIES.**

**EYES ON THE PRIZE PBS Home Video Collection.**

**THE EOTP COLLECTION CONTAINS: Volumes 1-14, Parts 1 & 2**

This landmark series will not be shown on TV again because copyrights on the music and archival material have expired. PBS rights to air the series expired in 1994 and the VHS version is out of print. Please read a recent NEWSWEEK article concerning this matter below.

**NEWS CLIPPING FROM NEWSWEEK MAGAZINE PAGE 8.**

**FEBRUARY 14, 2005**

CIVIL RIGHTS

## A Televised Movement?

TIFFINIY CHENG MET the Little Rock Nine — the students who integrated Central High School in Little Rock, Ark.—while watching the "Eyes on the Prize" civil-rights documentary in fifth grade. "I remember sympathizing with one of the girls over her fear of walking into that school," says Cheng, 24. Now, it's harder for children to view history's heroes. Copyright issues have made the award-winning 14-part series, which spans from 1954 to 1985, unavailable for purchase. (Libraries have copies, as did one eBay seller who recently sold the series for $535.)

"Eyes," produced by the late



MARCHING: '63, Washington, D.C.

Henry Hampton, of the Blackside film company, first aired on PBS in 1987. But clearance to air some of the film's copyrighted

footage, which includes newsreels of the Montgomery bus boycotts, expired in the decade after its release. Two weeks ago, the copyright-reform group Downhill Battle began urging people to download the series free of charge on downhillbattle.org. The group says 2,000 have downloaded copies, and 47 screenings are scheduled for Feb. 8. But days ago, Blackside lawyers had the links removed. Attorney Tony Pierce says Downhill Battle had "no legal basis" to provide copies of the film. He also says the group could have hurt Blackside's prospects with owners of copyrighted footage, with whom the company is in talks to air the series on PBS by 2006. (There's no date yet for a DVD release.) Until it's back on TV, "Eyes" fans will fight to view the films. And as the song goes, "They shall not be moved." –LISA HELEM

Because of the ever increasing unavailability of the series, **eyesontheprize.info** has been created to serve as an information source for anything that has to do with Eyes On The Prize.

**THE VOLUMES FOR THE ENTIRE SERIES ARE AS FOLLOWS:**
**FOR MORE INFORMATION ABOUT THESE VOLUMES PLEASE CLICK HERE**

**Volume 1**- Awakenings (1954-1956) America's Civil Rights Years 1954 to 1965
**Volume 2** - Fighting Back (1957-1962) America's Civil Rights Years 1954 to 1965
**Volume 3** - Ain't Scared of Your Jails (1960-1961) America's Civil Rights Years 1954 to 1965
**Volume 4** - No Easy Walk (1961-1963) America's Civil Rights Years 1954 to 1965
**Volume 5** - Mississippi: Is This America? (1962-1964 America's Civil Rights Years 1954 to 1965
**Volume 6** - Bridge to Freedom (1965) America's Civil Rights Years 1954 to 1965
**Volume 7** - The Time Has Come (1964-1966) America at the Racial Crossroads 1965 to 1985
**Volume 8** - Two Societies (1965-1968) America at the Racial Crossroads 1965-1985
**Volume 9** - Power! (1966-1968) America at the Racial Crossroads 1965-1985
**Volume 10** - The Promised Land (1967-1968) America at the Racial Crossroads 1965-1985
**Volume 11** - Ain't Gonna Shuffle No More (1964-1972) America at the Racial Crossroads 1965-1985
**Volume 12** - A Nation of Law? (1968-1971) America at the Racial Crossroads 1965-1985
**Volume 13** - The Keys to the Kingdom (1974-1980) America at the Racial Crossroads 1965-1985
**Volume 14** - Back to the Movement (1979-mid 1980's) America at the Racial Crossroads

**IF YOU WOULD LIKE TO ORDER THE COMPLETE SERIES OF ALL 14 EPISODES YOU CAN DO SO RIGHT HERE.** WE PURCHASE OUR MEDIA FROM MANY DIFFERENT SOURCES SUCH AS ONLINE AUCTION SITES, PRIVATE COLLECTIONS ETC.

**WE DO OUR BEST TO KEEP OUR PRICES BELOW PRICES YOU'LL FIND ON MOST SITES. WE INVITE YOU TO CHECK AUCTION SITES SUCH AS EBAY.COM AND COMPARE PRICES.** WE ARE SURE YOU WILL FIND OUR PRICES TO BE VERY AFFORDABLE.

BELOW THIS **EXAMPLE** YOU SHOULD SEE AN ACTUAL EBAY REAL-TIME AUCTION. IF YOU DON'T THEN PLEASE **CLICK THE REFRESH BUTTON** FOUND ON YOUR TOOL BAR.



YOU CAN PURCHASE A SET VIA EBAY WHICH WILL **REQUIRE EBAY REGISTRATION**, OR YOU CAN PURCHASE DIRECTLY FROM **WWW.EYESONTHEPRIZE.INFO**
**AT THE BOTTOM**
**OF THIS PAGE. IF YOU ARE UNABLE TO CLICK ON THE ORDER LINK BELOW SUCCESSFULLY THAT MEANS THAT UNFORTUNATELY AT THIS TIME WE CURRENTLY DO NOT HAVE ANY SETS IN OUR POSSESSION, BUT PLEASE CHECK BACK FREQUENTLY AS WE ARE CONSTANTLY SEARCHING THE WEB FOR SETS FROM PRIVATE COLLECTIONS AND VARIOUS WEBSITES. YOU MAY ALSO WANT TO SEARCH FOR A SET YOURSELF. HERE ARE JUST SOME OF THE SITES WE MONITOR.**
**GOOD LUCK!**











| Picture | Product | Price | Bids | Time Left |
|---|---|---|---|---|
| | PBS Home Video "Eyes On The Prize II" Set of 8 | $52.55 | 6 | 3h 01m |
| | Eyes on the Prize: America's Civil Rights Years 1954-19 | $5.95 | - | 3h 04m |
| | Eyes on the Prize by Juan Williams (1988) | $18.16 | - | 22h 35m |
| | The Eyes on the Prize by Clayborne Carson (1991) | $9.72 | - | 2d 11h 35m |
| | Eyes on the Prize by Juan Williams (1988) | $10.80 | - | 2d 11h 35m |
| | Eyes on the Prize by Juan Williams (1987) | $3.99 | 1 | 3d 05h 15m |
| | Eyes on the Prize - Awakenings (1954-1956) (1992, VHS) | $10.50 | 5 | 4d 00h 03m |
| | EYES ON THE PRIZE PBS DOCUMENTARY ALL 6 VOLUMES | $399.99 | *Buy It Now* | 4d 10h 16m |
| | Eyes on the Prize set (Civil Rights documentary) New! | $499.99 | - | 5d 03h 18m |
| | Dale Earnhardt - Eyes on the Prize Tankard | $40.00 | - | 5d 06h 10m |
| | King, Martin Luther, Jr.~EYES ON THE PRIZE NEW | $12.22 | - | 5d 15h 10m |
| | The Eyes on the Prize by Clayborne Carson (1991) | $6.75 | - | 6d 07h 07m |
| | The Eyes on the Prize by Clayborne Carson (1991) | $6.57 | - | 6d 07h 07m |
| | NEW - The Eyes on the Prize: Civil Rights Reader: Docum | $5.93 | - | 7d 05h 57m |
| | The Eyes on the Prize by Clayborne Carson (1991) | $6.57 | - | 7d 12h 36m |
| | NEW - Eyes on the Prize:Aint Scared of Jail | $74.88 | - | 7d 17h 33m |

| | | | | |
|---|---|---|---|---|
| | Eyes on the Prize by Juan Williams (1988) | $7.04 | - | 7d 20h 32m |
| | The Eyes on the Prize: Clayborne Carson - CIVIL RIGHTS | $5.99 | - | 8d 03h 37m |
| | The Eyes on the Prize by Clayborne Carson (1991) | $6.75 | - | 8d 07h 05m |
| | All Eyes on the Prize | $2.69 | - | 8d 07h 23m |
| | Eyes on the Prize by Juan Williams (1988) | $15.65 | - | 8d 10h 19m |
| | The Eyes on the Prize by Clayborne Carson (1991) | $6.75 | - | 9d 06h 57m |
| | Eyes on the Prize - Williams, Juan "NEW buySAFE | $12.40 | - | 11d 10h 13m |
| | Eyes on the prize : America's civil rights years : a re | $7.99 | - | 13d 02h 56m |
| | Eyes on the Prize - New BOOK "SHIPS FREE! | $16.73 | - | 13d 12h 35m |
| | View all 48 items on eBay | | | *disclaimer* |




**WE PURCHASE MANY DIFFERENT FORMATS, FROM MANY DIFFERENT SOURCES. CHECK BELOW TO SEE WHAT WE HAVE AVAILABLE TODAY!**

**BELOW IS WHAT WE HAVE AVAILABLE TODAY**
**AS OUR WEBSITE IS UPDATED AUTOMATICALLY/DAILY.**
***CLICK ON A PAYMENT OPTIONS TO SEE WHAT'S AVAILABLE TODAY**

**LAST UPDATE:**
April 12, 2006

## ORDERING
## OPTION #1

**YOU CAN MAKE A PURCHASE HERE USING PAYPAL. YOU <u>DO NOT</u> NEED A PAYPAL ACCOUNT TO USE THIS OPTION!**
**ALL YOU NEED IS A VALID DEBIT OR CREDIT CARD. PROCESSING IS INSTANT ONCE YOU SECURE YOUR ORDER ONLINE. YOU WILL IMMEDIATELY RECEIVE A RECEIPT VIA EMAIL AND YOUR ORDER WILL BE SHIPPED IMMEDIATELY!**

**NOW, USUALLY WITHIN 2-3 DAYS!**

THE PRICE IS FOR TODAY ONLY, AND IS NOT AVAILABLE TO PAST OR CURRENT CUSTOMERS. NO EXCEPTIONS.

## ORDERING
## OPTION #2





**Questions?**
**Phone 510-286-7677 Fax 510-315-3175**
QUESTIONS?
**questions@eyesontheprize.info**

      

Powered By 

**Copyright 2005**

**Privacy Policy**

Our Commitment To Privacy
Your privacy is important to us. To better protect your privacy we provide this notice explaining our online information practices and the choices you can make about the way your information is collected and used. To make this notice easy to find, we make it available on our homepage and at every point where personally identifiable information may be requested. We do not collect any customer information. Please see our payment processor's Privacy Policy concerning collected information.

# EXHIBIT B

**From:**          Daphne B. Noyes [daphne_noyes@wgbh.org]
**Sent:**          Thursday, February 09, 2006 3:43 PM
**To:**            Sandy Forman
**Subject:**       Fwd: Bogus website!

**Importance:**    High


Sandy, would appreciate your thoughts on this. I'm in over my head! Tks -- DBN

---------------------------------------
Date: Thursday, February 9, 2006 3:25 PM
From: Victoria Yuen <victoria_yuen@wgbh.org>

The viewer who originally wrote in about the suspect wesbite has filed a formal complaint
with Paypal to get a refund for the tapes. Is there anything we can send her from
Blackside in a legal way that can help pursuade Paypal to give her the refund?
 Thanks.
 -Victoria x5423

 On Thursday, February 9, 2006 2:40 PM, marianne redmond <marianne_redmond@wgbh.org>
wrote:
>
> ---------------------------------------
> Date: Thursday, February 9, 2006 2:39 PM
> From: Daphne B. Noyes <daphne_noyes@wgbh.org>
>
> Please be aware that the Website below, which claims to be the source
>for all things "Eyes on the Prize"  is not--there is in fact legal
>action pending against them according to Blackside's attorney, Sandy
>Forman. All this despite the P-head quite authoritatively placed on
>their site! (Carrie, is PBS taking any action on this?)  We are working
>on crafting language to address the bootleg copies of Eyes that are
>available from sources such as this one and eBay; new info will be
>included in a revised version of the FAQ, but in the meantime wanted
>you all to be aware of this. Thanks to Victoria for bringing this to my
>attention. DBN
>
>http://eyesontheprize.info/
>


--
No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.1.375 / Virus Database: 267.15.3/254 - Release Date: 2/8/2006

# EXHIBIT C

| Department of Defense Manpower Data Center |
|---|

 **Military Status Report**
Pursuant to the Service Members' Civil Relief Act

## To be completed by Requestor:

| Last Name | First Name | Middle Name | Social Security # | Date of Birth |
|---|---|---|---|---|
| Arrington | Chad | S. | | |

Send this request with a self-addressed stamped envelope to:

> Military Verification
> Department of Defense – Manpower Data Center
> 1600 Wilson Blvd., Suite 400
> Arlington, VA 22209-2593

## To be completed by DMDC:

Upon searching the information data banks of the Department of Defense Manpower Data Center, below is the current status of the individual, per the information provided, as to all branches of the Military.

**Not** on Active Duty ___✓___    On Active Duty _____

Comments:_____

Date: __2 | 7 | 06__

Virginia Brooks/James McCloud/ Marcia Byerley

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The Department of Defense strongly supports the enforcement of the Service Members Civil Relief Act [50 USCS Appx. §§ 501 et seq] (SCRA) (formerly the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are most strongly encouraged to contact us by phone at (703-696-6762). We will then conduct further research. Your failure to re-contact DMDC may cause provisions of the SCRA to be invoked against you.

This response reflects current active duty status only. For historical information, please contact the military services SCRA point of contact.

See: http://www.defenselink.mil/faq/pis/PC09SLDR.html

## We cannot provide a response unless a self-addressed stamped envelope is provided!

## CERTIFICATE OF MAILING AND SERVICE

I, Tobias E. Zimmerman, certify that on April 14, 2006, I served copies of:

    (1) Plaintiff's Motion for Entry of Default Judgment;

    (2) Declaration of Sarah E. Bolen, dated April 13, 2006; and

    (3) Declaration of Judi Hampton, dated April 14, 2006

via first-class mail, postage prepaid on:

        Chad S. Arrington
        2342 Shattuck Avenue
        Berkeley CA, 94704

I also transmitted electronic copies of the foregoing documents via Electronic Mail, from

tzimmerman@akingump.com, to the following electronic addresses:

        questions@eyesontheprize.info;
        chadonline@msn.com;
        primemediaonline@msn.com; and
        arivas27@yahoo.com.

                    Tobias E. Zimmerman